IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IONA WEST, | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | _____ |
| | § | Jury Demanded |
| HONEYWELL INTERNATIONAL INC., | § | |
| | § | |
|     Defendant. | § | |

### PLAINTIFF, IONA WEST'S, ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Iona West, hereinafter called "Plaintiff" and/or "Ms. West", complaining of and about Honeywell International Inc., hereinafter called "Defendant" and/or "Honeywell", and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1. Plaintiff, Iona West is a citizen of the United States and the State of Texas and resides in Brazoria County, Texas.

2. Defendant, Honeywell International Inc. is, on information and belief, an American multinational company with its headquarters at 101 Columbia Road, Morristown, New Jersey 07962. On information and belief, Honeywell International Inc. conducts substantial business in Texas. Honeywell International Inc. can be served through its registered agent, Corporation Service Company, at its registered office at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

1

## JURISDICTION

3. The action arises under 28 U.S.C. section 1331, (federal question), 28 U.S.C. section 1343 (civil rights), and 42 U.S.C. section 2000(e) as hereinafter more fully appears.

4. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

5. This is an action under Title 42 U.S.C. Section 2000e et. seq. and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race, color and sex.

## CONDITIONS PRECEDENT

6. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

7. This is an action under Title 29 U.S.C. Section 621 through 634 to correct unlawful employment practices on the basis of age.

## FACTS

8. On or about, October of 2014, at the behest of a recruiter, Ms. West applied to Defendant's open position for Sr. Solutions Engineer Position on the Honeywell Hiring system. Shortly thereafter, an interview was arranged by the recruiter and Wayne Gaafar (hereinafter "Mr. Gaafar"), Hiring Manager, for a future in-person interview with Ms. West and Defendant's hiring panel. Ms. West interviewed for the Sr. Solutions Engineer Position with Phil Jarrell,

Jaime Salome, Brendan Sheehan and Reggie Barnett. After the interview was conducted, Ms. West was asked to come to the Defendant's facility in Houston, Texas. Upon her arrival, Ms. West met with Mr. Gaafar who gave her a tour of the Customer Experience Center (CEC) facility. He also informed her that she would be required to travel with the demo team to support other CEC facilities and events across the globe. Ms. West was eventually offered the job of Sr. Solutions Engineer. When she received the offer letter in her e-mail she noted that the position was not the position she applied nor interviewed for. When being informed of the title of the position she was being offered, Ms. West asked Mr. Gaafar as to why the names differed. Mr. Gaafar stated: "The official title was Sr. Solutions Engineer and the Sr. Marketing Specialist Support title was for the Human Resource Telao (hereinafter "HR") system." Mr. Gaafar informed her that the duties were that of Sr. Solutions Engineer and that her Job duties had not changed.

9. Due to the assurances of Mr. Gaafar, Ms. West accepted the position and began her tenure with Defendant on February 5, 2015.

10. Her employment at its outset was unusual. Mr. Gaafar, though on her hiring committee, seemingly acted very unreceptive in her being chosen for the position.

11. Shortly, after June of 2015, due to the disparate treatment she was receiving at the hands of Mr. Gafaar, Ms. West filed EEO complaint (internal grievance procedure). Mr. Gaafar on numerous occasions had requested Ms. West to clean up while working in Phoenix, AZ and San Antonio, TX, pack and label boxes and "leave the technical work to the men." Further, Ms. West was left off relevant business related emails of Mr. Gafaar unless he needed someone to locate something, pickup, deliver or a litany of other menial tasks that were outside of her job description. Other team members, Ben Comtois (hereinafter, " Mr. Comtois), were told by Mr.

Gafaar, "that she (Ms. West) did not know anything." Ms. West after being notified of Mr. Gafaar's disparaging comments brought this to the attention of Laura Mossman (hereinafter, "Ms. Mossman), HR director in hopes of rectifying this matter as it was fairly early in her employ with Defendant and she hoped to salvage any relationship that could be had with Mr. Gafaar. Ms. West even went the extra-step to hopefully see if Phil Jarrell (hereinafter, " Mr. Jarrell), Global Growth Director, Plant and Personnel Safety, could intervene to see if he could bring the sides to "common ground".

12. Problems persisted into the following year, with them reaching their apex in January of 2016. At that particular time Mr. Gaafar threatened Ms. West, when he said, "I would not do that if I were you," in response to Ms. West, averring that she would go to HR if the harassment and retaliation didn't cease. Ms. West followed up the exchange with Mr. Gaafar, with an email to the HR Director Ms. Mossman. Ms. West disclosed the basis of the harassment and retaliation she received stemmed from his seeming bias towards her as an African American female. When Ms. West spoke with HR, a colleague by the name of Ms. Cherri Dozier also participated by providing information pertaining the complaint of harassment.

13. On or about February 25, 2016, Ms. West met with Mr. Gaafar to discuss her first end of the year performance review. During that review Ms. West noticed in her performance review that Mr. Gaafar had stated that Ms. West needed to modify her communication. When Ms. West inquired as to the reason for the aforementioned notation, Mr. Gaafar said, " Because you told on me." Even with Ms. West complaints being brought to HR Director Ms. Mossman, Mr. Gaafar's retaliatory, harassing and threatening acts persisted. Ms. West informed Ms. Mossman that these acts were ongoing so Ms. Mossman assigned this complaint to HR Generalist, Sheri Thergill (hereinafter "Ms. Thergill") (Ms. Thergill duties were subsequently

granted to Anna Thorton).

14. March of 2016, Mr. Brendan Sheehan (hereinafter " Mr. Sheehan"), Director of HPS Marketing, asked Ms. West to work as the Demo Room Manager during the yearly Honeywell User Group HPS ("HUG") customer events. Mr. Gaafar informed Ms. West that he was upset about the Mr. Sheehan's decision to put her in charge. During this thoroughly intensive project that spanned from March 2016 to Late June 2016, Ms. West was directing and managing processes for over 100 Honeywell employees and contractors. Ms. West did the same work that would've been required of her male counterparts but did not receive the same pay structure at the doing of Mr. Gaafar.

15. Consistent with his actions earlier in the year, Mr. Gaafar continued to harass and discriminate against Ms. West.  In early June of 2016, on another project, Mr. Gaafar attempted to prohibit Ms. West from doing her job. This particular project was deploying the technical equipment to the HUG Demo Room, in San Antonio, Texas.  Ms. West reported Mr. Gaffer's attempts to thwart the project's success to her superior on the project, Phil Jarrell (hereinafter, "Mr. Jarrell"), Ms. West's Matrix Manager.  When confronted by Barbara de Baar and others, Mr. Gaafar, stated, " that he was just doing this in order to embarrass the President of HPS. In reality with Ms. West as lead on this project, the President of HPS would be notified of her unsuccessful project and take it out on her. This incident was reported to Mr. Jarrell, Ken Moshier and the HR team. Mr. Jarrell informed Ms. West to "work around him". Though higher-ranking managers were aware of Mr. Gafaar's behavior, nothing was done to stop Mr. Gaafar's acts outside of an obligatory verbal reprimand.

16. Mr. Greg Belcher (hereinafter "Mr. Belcher"), a white male colleague worked on the HUG project as well. During the project, due to his inattentiveness and carelessness resulted

in him destroying one of the cloud-based servers. Mr. Gaafar contacted IBM technical team (third party source) to assist Mr. Belcher with his duty to timely bring in a server. In the breaking and need for subsequent replacement, Mr. Belcher added an additional cost to Honeywell because IBM technical support was called to walk him through the process of troubleshooting the issue. Though Mr. Belcher's performance was less than stellar, his deficiencies were overlooked and he was rewarded with a Honeywell Monetary award, conversely, in future Ms. West would be terminated for deficient performance. Inaccurately, as mentioned in Honeywell's statement, Ms. West was accused of "causing friction" with others at the HUG event.

17. Though Ms. West was up against constant antagonism while conducting the HUG project, Mr. Jarrell presented her a performance award, stating, " She did an exceptional job managing the (HUG) project and made it look effortless." Brendan Sheehan (hereinafter "Mr. Sheehan"), Director of HPS Marketing and Ken Moshier (hereinafter "Mr. Moshier") also lauded Ms. West work on the project.

18. In late July 2016, Ms. West received a call from Mr. Moshier, Sr. Manager for Solutions Consultants. He and Ms. West reported to Mr. Sheehan. Mr. Mosier stated that Mr. Gaafar told Ms. West that Mr. Belcher did an excellent job on the HUG project, and to grant him a performance award. Ms. West declined, citing Mr. Belcher's insubordinate and hostile behavior while trying to show him how to perform a technical procedure that he was unfamiliar with, along with his deficient performance that caused critical delays and cost with regards to the project. Mr. Mosier stated that Mr. Gaafar had not informed her of these issues with Mr. Belcher. Ms. West at this time informed Mr. Moshier of Mr. Gaafar's interference with the HUG project. Nothing was done to address their behavior.

19. On or about July 28, 2016, Mr. Gaafar, Ms. West's primary manager, and Mr.

Jarrell, her matrix manager, met with Ms. West to discuss her mid-year performance update. The position statement Honeywell provided the EEOC stated that Mr. Jarrell provided feedback, when in fact Mr. Gaafar wrote the inaccurate statement and signed the document. Mr. Jarrell sat in on the review and Ms. West informed him the information provided in the review were not true. Though documented in the review, Mr. Gaafar had not in fact set any deadlines in the HUG project nor did he have a project plan. Ms. West avers that Mr. Gaafar had informed her that her plans were too formal. Ms. West asked Mr. Jarrell, Mr. Moshier and Geneva Taylor (hereinafter, "Ms. Taylor"), HR Director to have the misinformation removed from her update and they all refused to do so.

20. August of 2016, management realigned. Ms. West was then under the direct supervision of Mr. Jarrell, with Mr. Gafaar retaining the position of Matrix Manager. Mr. Jarrell would now be allowed to write the reviews for Ms. West.

21. From September 2016 through December 2016, Ms. West was bestowed numerous awards from other colleagues for her stellar work and professionalism.

22. That same December, Ms. West spearheaded the configuration and rollout of a cumbersome project for their client Chevron. Though her male counterparts were unwilling to stay after normal business hours, Ms. West stayed and was an integral part in making sure the project was a success. Those same male colleagues were given bonuses and Ms. West was not.

23. At the end of December 2016, Ms. West participated in an EEOC investigation that had been filed by Ms. Dozier. This complaint was filed against Mr. Gaafar and other Honeywell employees. Ms. West met with Honeywell's in-house counsel Eben Krim (hereinafter "Mr. Krim"), to speak on the matter, Mr. Krim informed Ms. West he would relay her concerns to HR. Mr. Krim inaccurately informed outside counsel that Ms. West did not disclose that the

men who were similarly situated were in fact getting paid more.

24. In January of 2017, management was realigned again. Mr. Jarrell informed Ms. West that Mr. Gaafar was no longer her Matrix Manager and that she was not to go near him. This removal of Mr. Gaafar was subsequent to the EEOC investigation.

25. February 10, 2017, Mr. Belcher was promoted to manager of a Demo Team. This came subsequent to his subpar work performance and his hostile interactions with Ms. West. Ms. West informed Mr. Moshier of her interest in the position and was skipped over.

26. As a strange turn in events, on February 22, 2017, Ms. West was brought in to meet with Mr. Jarrell for her end of the year review. Mr. Jarrell posited in her written review, that Ms. West needed teamwork and diversity training. Upon Ms. West inquiring as to why he thought she needed this training, Mr. Jarrell said, "Because you said Wayne Gaafar is being racist/discriminating and retaliating against you. He is not a racist and does not discriminate against African American females." Mr. Jarrell after drafting such review then removed her from his team and placed her in a known hostile environment under the management of Mr. Belcher.

27. At the end of February 2017, Ms. West filed an EEO (internal Honeywell) complaint against Mr. Jarrell due to what she accepted as retaliatory behavior by Mr. Jarrell in aid of covering up or siding with Mr. Gaafar. Ms. West noticed Ms. Mossman, Ms. Taylor and her HR Generalist (Angela Knappath); nothing was done to address her concerns.

28. A month after beginning her tenure under Mr. Belcher, April 2017, Ms. West was removed from the FDU project and was replaced by Mr. Gaafar. Mr. Belcher also allowed Mr. Gaafar, to take over the assignments Ms. West had as a Demo Manager. Ms. West asked Mr. Belcher as to why he was stripping her of her demo duties, for which Mr. Gaafar stated, "Because you told on me." While doing so Mr. Belcher informed Ms. West that he was aware of

her reporting Mr. Ben Comtois (hereinafter "Mr. Comtois") for telling profanity laced jokes toward Ms. West and that he was just joking with her. This along with a litany of other retaliatory/discriminatory acts took place against Ms. West in that particular month including:

1.) Removing Ms. West from Mr. Moshier's training meetings (Mr. Gaafar remained in meetings). 2.) Mr. Belcher informed Ms. West that he along with Mr. Moshier and Mr. Gaafar were determining Ms. West role for upcoming projects. 3.) Ms. West was moved off the Demo Room Technical Team (Mr. Gaafar remained on Honeywell Users Group Project). 4.) Mr. Mosier took over the CEC Lab Update project.

29. In June of 2017 during a HUG project, Mr. Belcher berated Ms. West and violently beat on the keyboard next to her workstation. Ms. West alerted Mr. Moshier who did not even respond. Ms. West then went to Mr. Sheehan who told Ms. West to talk to Mr. Belcher about their issue. During this 2017 HUG event Mr. Belcher again broke the same servers and was unable to perform his job duties. This was an additional cost to Honeywell, as others had to assist Mr. Belcher with his job duties.

30. Due to the continued treatment and lack of remedial measures taken by Honeywell, Ms. West informed Ms. Taylor that she would have to seek outside recourse via the EEOC. Mr. Belcher was put on notice and informed her due to the fact of her going to the EEOC that he would not cease communicating with her with regards to her project.

31. On November 9, 2017, Ms. West filed her complaint with the EEOC. That same month Mr. Belcher would call Ms. West to several meetings with the HR generalists. Mr. Belcher informed her to cease and desist asking questions about projects in the CEC. These were project that Ms. West was apart of prior to making complaints or her treatment internally and well before filing with the EEOC. From there Mr. Belcher drastically changed her duties. Ms.

West was assigned administrative work. He told Ms. West that she was no longer supporting EMEA HUG and that she was not going to be doing anymore technical work at HUG American; he also stripped her of her duties with the CEC systems. Ms. West's works were then directed to Mr. Gaafar and other employees within the company.

32. On February 2, 2018, less than 3 months after filing her EEOC complaint, Ms. West was told that her position was eliminated. Ms. West asked if it was due to performance and she was told no. Ms. West was told that there was a reduction in force. As of June 2018, Ms. West's position has not been eliminated and is still being carried out by those who took over her duties prior to her being let go.

## RACE AND COLOR DISCRIMINATION

33. Paragraphs 1-32 are restated herein and incorporated by reference

34. Defendant, Honeywell International Inc., intentionally engaged in unlawful employment practices involving Plaintiff because of her race and color.

35. Defendant, Honeywell International Inc., also violated Plaintiff's rights under 42 U.S.C. Section 1981.

## SEX DISCRIMINATION

36. Paragraphs 1-32 are restated herein and incorporated by reference

37. Defendant, Honeywell International Inc., intentionally engaged in unlawful employment practices involving Plaintiff because she is a female.

## DISCRIMINATION

38. Paragraphs 1-32 are restated herein and incorporated by reference

39. Defendant, Honeywell International Inc., discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited,

segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's race, color and sex in violation of 42 U.S.C. Section 2000e-(2)(a) and 42 U.S.C. Section 1981.

40. Defendant, Honeywell International Inc., classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e-(2)(a) and 42 U.S.C. Section 1981.

41. Plaintiff alleges that Defendant, Honeywell International Inc., discriminated against Plaintiff on the basis of race, color and sex with malice or with reckless indifference to the state-protected rights of Plaintiff.

## RETALIATION BY HONEYWELL INTERNATIONAL INC.

42. Paragraphs 1-32 are restated herein and incorporated by reference

43. Plaintiff alleges that Defendant Honeywell International Inc. instituted a campaign of retaliation, which included stripping Ms. West of her duties, demoting her to positions and submitting her to tasks not within her job description or duties. Allowing for her to be continuously subjected to hostile behavior at the hands of those she's accused of discriminatory acts. Not paying her for the same and work above that over her male and non-African American colleagues.

44. Further, This retaliation was and is due to Plaintiff exercising her (internally with employer and externally) rights by opposing a discriminatory practice, making a charge and testifying, assisting, or participating in an investigation or proceeding regarding an unlawful discriminatory practice. Plaintiff suffered damages for which Plaintiff herein sues.

## HARASSMENT

45. Paragraphs 1-32 are restated herein and incorporated by reference.

11

46. Plaintiff was subject to harassment, both offensive and unwelcomed, by Defendant, Honeywell International Inc., on the basis of Plaintiff's race, color, and sex.

47. Defendant, Honeywell International Inc., intentionally engaged in unlawful employment practices against Plaintiff where enduring the offensive conduct became a condition of Plaintiff's continued employment.

48. Defendant, Honeywell International Inc., intentionally engaged in unlawful employment practices against Plaintiff where the offensive conduct was severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

49. Defendant, Honeywell International Inc., also violated Plaintiff's rights under 42 U.S.C. Section 1981.

## DAMAGES

50. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

   a. Type in the actual damages, which Plaintiff is seeking in this matter.

   Example: "All costs necessary to re- certify Plaintiff";

   b. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

   c. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

   d. All reasonable and necessary costs incurred in pursuit of this suit;

   e. Front pay in an amount the Court deems equitable and just to make

    Plaintiff whole;

  f. Inconvenience;

  g. Prejudgment interest;

  h. Loss of earnings in the past; and

  i. Loss of benefits.

## EXEMPLARY DAMAGES

  51. Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff.  In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## PRAYER

  **WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Iona West, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By:     /s/Gene A. Watkins
    Gene A. Watkins
    Attorney-in-Charge
    Texas Bar No. 25058954
    Southern District Bar No: 1129993
    E-Mail: gwatkins@shermanwatkins.com
    1418 Washington Avenue
    HOUSTON, TX 77002
    Tel. (713) 224-5113
    Fax. (866) 560-8676
    Attorney for Plaintiff
    Iona West

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**