United States District Court
Southern District of Texas

**ENTERED**

August 31, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IONA WEST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-04627 |
| | § | |
| HONEYWELL INTERNATIONAL INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Defendant's Motion for Summary Judgment (the "Motion") (Doc. #26), Plaintiff's Response (Doc. #31), and Defendant's Reply (Doc. #37). Having reviewed the parties' arguments and applicable legal authority, the Court grants in part and denies in part the Motion.

### I. Background

Iona West ("Plaintiff") brings this employment discrimination suit against her former employer Honeywell International Inc. ("Defendant") under 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1981 ("Section 1981").[1] Plaintiff is an African American woman. Doc. #31, Ex. 3 ¶ 2. She was employed by Defendant from February 5, 2015 to February 1, 2018 in a position that was externally listed as "Sr. Solutions Engineer" and internally titled "Sr. Marketing Specialist." Doc. #26, Ex. A ¶ 3; Doc. #31, Ex. 3 ¶ 3. Her job was to support Defendant's

---

[1] Though Plaintiff often refers to the Complaint in her Response to the Motion, "[p]leadings are not summary judgment evidence." *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 178 (5th Cir. 2016); *see, e.g.,* Doc. #31 at 15 (citing only the Complaint to support allegations that Plaintiff's former manager stripped her of certain duties). Plaintiff also makes assertions without citing to any document at all. *See, e.g.,* Doc. #31 at 11 (citing no record evidence for allegations that Plaintiff's first manager intentionally sabotaged her work performance). As such, the Court will only consider the facts that are properly supported by the summary judgment record in adjudicating the Motion.

Customer Experience Center ("CEC"), located in Houston, Texas, as part of the Demo Team. Doc. #26, Ex. A ¶ 3. Her duties included providing technical support and maintenance related to CEC equipment, running demonstrations for clients, and supporting the annual Honeywell User Group ("HUG") event. *Id.*, Ex. A ¶¶ 3–5; Doc. #31, Ex. 7 at 4. From the beginning of her employment, Plaintiff estimated that approximately 50%–65% of her duties were "custodial." Doc. #31, Ex. 6 at 554.

Plaintiff's conflicts with Defendant began early in her employment. Each of Plaintiff's managers noted deficiencies in her communication style and other teamwork issues. Doc. #26, Ex. D at 3–4, Ex. G at 2, Ex. I at 3, Ex. M at 2, and Ex. P at 2–3. Early on in her employment, Plaintiff took offense to her first manager, Wayne Gaafar, telling another employee that Plaintiff was strong enough to lift something on her own. *Id.*, Ex. C at 154:14–155:8. On April 1, 2016, shortly after receiving a performance evaluation where Gaafar noted her deficient communication style, Plaintiff made an internal complaint against Gaafar and other employees, alleging a hostile work environment and discrimination. *Id.*, Ex. D at 2–4 and Ex. E at 2, 4–6. Then, while preparing for the HUG event in June 2016, Plaintiff and another employee, Greg Belcher, got into a heated argument, during which they yelled at each other and Belcher threw a roll of gaffer tape near her. *Id.,* Ex. C at 168:13–172:4; Doc. #31, Ex. 19 at 3–4. Plaintiff reported this incident, which was not addressed through Defendant's formal HR process until August 2017. Doc. #31, Ex. 32 at 2.

In August 2016, Phil Jarrell became Plaintiff's manager. Doc. #26, Ex. A ¶ 8. Beginning in December 2016, Plaintiff participated in an investigation related to another individual's EEOC charge against Gaafar, her previous manager. *Id.*, Ex. A ¶ 9. In February 2017, ahead of leaving Defendant in March 2017, Jarrell met with Plaintiff to discuss her 2016 performance evaluation and to inform her that Belcher would be the new leader of the Demo Team. *Id.*, Ex. A ¶ 10 and Ex. C at 104:15–106:22, 127:24–129:20. Plaintiff avers that at that meeting Jarrell told her "we

2

are placing you in a hostile working environment" and "if you file another complaint against anyone you better watch out."  Doc. #31, Ex. 3 ¶ 18.  Plaintiff reported the incident to HR directly after the meeting.  Doc. #26, Ex. C at 127:24–129:10.

In June 2017, again in preparation for the annual HUG event, Plaintiff and Belcher got into another argument over a technical matter and Belcher later banged on his keyboard.  Doc. #31, Ex. 20 at 2.  On July 11, 2017, Plaintiff informed HR of her intent to file an EEOC charge that same day, though her charge was not actually processed until months later.[2]  Id., Ex. 21 at 4.  After learning of a potential charge, Belcher, an Australian, reached out to HR to learn about his rights and responsibilities and rescheduled his weekly "catch-up meetings" with Plaintiff to include an HR representative.  Id., Ex. 11 at 125:1–127:4, Ex. 22 at 2, and Ex. 23 at 2.  Later that summer, in August 2017, Plaintiff complained to HR about Belcher commenting on a team call that he would destroy anyone's mobile devices that drained CEC equipment batteries, along with Plaintiff's previous conflicts with Belcher related to HUG preparation.  Id., Ex. 17 at 4–5.

In September 2017, Ken Moshier, Defendant's Global Consultant Manager, first contemplated transitioning the CEC to a cloud-based system, eliminating the need for a facility dedicated to in-person demonstrations of Defendant's technology.  Doc. #26, Ex. F ¶¶ 6–9.  On November 17, 2017, Belcher informed Plaintiff that her support for HUGs outside of North America would no longer be required.  Doc. #31, Ex. 30 at 7.  By January 2018, the Demo Team had decreased from six people to three: Belcher, Plaintiff, and another employee.  Doc. #26, Ex. F ¶ 5.  Plaintiff was the only team member based in Houston.  Id., Ex. F ¶¶ 3, 5.  As part of a reduction in force related to Moshier's business decision to transition to a cloud-based system, Plaintiff's position was eliminated and she was terminated effective February 1, 2018.  Id., Ex. A ¶¶ 12–13

---

[2] Due to logistical issues, Plaintiff refiled her EEOC charge on November 9, 2017 and the EEOC processed it on November 27, 2017.  Doc. #31, Ex. 27 at 2–3.

and Ex. F ¶¶ 6–9. Moshier made the decision to eliminate Plaintiff's position and Geneva Taylor, Defendant's HR Director, approved it. *Id.*, Ex. A ¶ 13 and Ex. F ¶ 9.

Plaintiff's first EEOC charge was filed on November 9, 2017, processed on November 27, 2017, and she received a right to sue letter on September 10, 2018. Doc. #31, Ex. 26 at 2, Ex. 27 at 2–3, and Ex. 40 at 2. Plaintiff filed a second EEOC charge on October 18, 2018 and received a right to sue letter six days later.[3] *Id.*, Ex. 28 at 2–3. Plaintiff then filed her Complaint in this Court on December 7, 2018, asserting claims for discrimination, hostile work environment, and retaliation, based on her race, color, sex, and participation in protected activities. Doc. #1 at 10–12. Defendant now moves for summary judgment on all claims. Doc. #26.

## II.    Legal Standard

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED R. CIV. P. 56(a). "The question at summary judgment is whether the record, taken as a whole, could lead a rational trier-of-fact to find for the non-moving party." *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018) (cleaned up). When the burden of proof lies with the nonmoving party, the moving party may satisfy its burden by "showing—that is, pointing out to the district court—that there is an absence

---

[3] Defendant objects to the Court's consideration of Doc. #31, Ex. 28 as an "unauthenticated" photo of Plaintiff's second EEOC charge that does not evince that the second charge was ever submitted. Doc. #37 at 1 n.1. "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible…the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) (cleaned up). Here, the exhibit at issue contains a signed right to sue letter with a case number matching Plaintiff's second EEOC charge. Doc. #31, Ex. 28 at 2–3. Defendant's objection that the contested document "exists only on someone's camera memory" is contradicted by this right to sue letter, which indicates that a copy was sent to Defendant's legal department. Doc. #37 at 1 n.1; Doc. #31, Ex. 28 at 3. Because the Court finds no indication that the EEOC charge and right to sue letter contained in Doc. #31, Ex. 28 could not be presented in a form that would be admissible at trial, Defendant's objection is overruled. *See Lee*, 859 F.3d at 355.

of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is then appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[s]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment," and "a vague or conclusory affidavit [without more] is insufficient to create a genuine issue of material fact in the face of conflicting probative evidence." *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013). Additionally, "[p]leadings are not summary judgment evidence." *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 178 (5th Cir. 2016).

### III.   Analysis

#### a.   Discrimination

Defendant argues that Plaintiff's Title VII and Section 1981 discrimination claims cannot survive summary judgment because she cannot establish that Defendant's stated reason for eliminating her position was pretext.[4] Doc. #26 at 20–22. Title VII and Section 1981 discrimination claims that rely on circumstantial evidence, as Plaintiff's do, are analyzed using the *McDonnell Douglas* burden-shifting framework. *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403, 403 n.2 (5th Cir. 1999). Under this framework, a plaintiff has the initial burden of demonstrating a *prima facie* case of discrimination. *Morris*, 827 F.3d at 400. If the plaintiff makes such a showing, the burden shifts

---

[4] Because Plaintiff only argues that her separation from Defendant constituted an actionable act of discrimination, it is the only incident the Court will consider in ruling on these claims. *See* Doc. #31 at 27; *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived.") (internal quotation marks omitted).

5

to the defendant to "articulate a legitimate non-discriminatory reason for the adverse employment action." *Id.* (citation omitted). "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) (citation omitted).

If the employer articulates a legitimate non-discriminatory reason, the burden then shifts back to the plaintiff to demonstrate either "(1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (internal quotation marks omitted). However, discrimination as a "motivating factor" is only sufficient to prove causation for Title VII claims of discrimination; Section 1981 claimants must prove discrimination was the but-for cause of the adverse employment action. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014–15 (2020). A plaintiff must demonstrate that the decision-maker responsible for the adverse employment action harbors a discriminatory motive or make a "cat's paw" argument by showing "(1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (citation omitted).

Here, assuming Plaintiff has made a *prima facie* showing of discrimination, Defendant has articulated a legitimate non-discriminatory reason for her termination and Plaintiff has failed to establish pretext. Defendant proffers that Plaintiff's position was eliminated as part of a reduction in force, following a determination in September 2017 that there was no longer a business need for an individual to maintain the CEC following a shift to cloud-based demonstrations. Doc. #26, Ex. A ¶¶ 12–13, Ex. F ¶¶ 6–9. A reduction in force is a legitimate, non-discriminatory reason to

6

terminate an employee.  *Roberson*, 373 F.3d at 656.  Thus, Defendant has met its burden under *McDonnell Douglas* and the burden shifts back to Plaintiff.  *See Morris*, 827 F.3d at 400.

Plaintiff argues that the reduction in force was pretext for discrimination because she was the only African American woman on her team and Defendant only eliminated her position. Doc. #31 at 33–35.  However, Plaintiff testified that none of Defendant's employees ever made any jokes, comments, or insults about her race, color, or sex.  Doc. #26 Ex. C at 154:1–155:25.  Plaintiff also did not identify the individuals who made and approved the decision to eliminate her position, Moshier and Taylor, as the individuals who treated her unfairly, nor does she offer evidence that the coworkers who allegedly held discriminatory animus towards her had leverage or influence over Moshier and Taylor.  Doc. #26, Ex. C at 86:5–16; Doc. #31 at 31–35; *cf Roberson*, 373 F.3d at 653.  Conversely, both Moshier and Taylor have submitted sworn affidavits stating that they did not take any of Plaintiff's protected characteristics into account when deciding to terminate her.  Doc. # 26, Ex. A ¶ 13 and Ex. F ¶ 9.

Furthermore, while Plaintiff was the only African American woman on the Demo Team, her position was also the most significantly intertwined with the in-person business functions Defendant was eliminating.  Plaintiff was the only team member (1) with her job code, (2) based on-site in Houston, and (3) responsible for maintaining the equipment of the physical demo space.  *Id.*, Ex. F ¶¶ 3–5; Doc. #31, Ex. 7 at 4, and Ex. 35 at 3.  Plaintiff's attempt to rebut this evidence with her own conclusory allegations is insufficient to defeat summary judgment.  *See* Doc. #31 at 33–35; *Kariuki*, 709 F.3d at 505.  Given the evidence currently before the Court and making all reasonable inferences in Plaintiff's favor, the Court finds that no reasonable trier of fact could determine that the reduction in force was a pretextual reason for unlawfully terminating Plaintiff based on her protected characteristics.  *See Celotex*, 477 U.S. at 322–25; *Koerner*, 910 F.3d at 227.

Accordingly, the Motion is granted as to Plaintiff's discrimination claims.

7

**b.   Hostile Work Environment**

Defendant next argues that Plaintiff's hostile work environment claims cannot survive summary judgment because she cannot establish that any of the alleged conduct occurred because of her race, color, or sex. Doc. #26 at 22. Plaintiff's Title VII and Section 1981 claims are assessed under the same standard. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012). "To survive summary judgment on a hostile work environment claim based on race or sex discrimination, a plaintiff must show that…the harassment was based on her membership in a protected class." *West v. City of Hous.*, 960 F.3d 736, 741 (5th Cir. 2020) (citation omitted). Plaintiff mistakenly asserts that Defendant failed to brief this element in the Motion and proceeds as if that argument was waived, offering no evidence that any of the alleged harassment was based on Plaintiff's membership in a protected class.[5] Doc. #31 at 27. In its review of the portions of the record cited by the parties, the Court did not find any evidence suggesting that the alleged harassment was based on any of Plaintiff's protected categories. As such, Plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [her] case." *See Celotex*, 477 U.S. at 322.

Accordingly, the Motion is granted as to Plaintiff's hostile work environment claims.

**c.   Retaliation**

Defendant next argues that Plaintiff's retaliation claims should be dismissed because she cannot establish a *prima facie* claim and, even if she could, she cannot show that Defendant's reason for eliminating her position was pretextual. Doc. #26 at 29–33. Retaliation claims under Title VII and Section 1981 are governed by "the familiar three-step *McDonnell Douglas* test"

---

[5] Defendant stated at least three times that summary judgment should be granted as to these claims because Plaintiff did not establish the alleged harassment was based on her race, color, or sex. Doc. #26 at 4, 22, 25.

explained above and require the same elements of proof.  *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007) (citation omitted); *Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019).  To state a *prima facie* case for retaliation, "a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (cleaned up).  If the burden shifts back to the plaintiff, she can avoid summary judgment "by showing that the adverse action would not have occurred but for the employer's retaliatory motive" or that "a conflict in substantial evidence" exists regarding "whether the employer would not have taken the action but for the protected activity." *Id.* (cleaned up).  If an employer learns of the protected activity after it first contemplates taking the adverse employment action, the causal connection is severed. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271–74 (2001).

### 1.    Change in Work Duties

Defendant argues that Plaintiff's alleged retaliatory change in work duties is not a materially adverse employment action as a matter of law.  Doc. #26 at 30–31.  However, an employee may be subject to an adverse employment action if the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  A change in duties within the scope of a plaintiff's employment can be adverse if the employee "spend[s] more time performing the more arduous duties and less time performing those that are easier or more agreeable." *Id.* at 71.  A change in prestige or required qualifications may also evidence material adversity. *Id.*  However, a plaintiff must produce evidence that allows the court to see how dramatically their day-to-day activities changed to survive summary judgment. *See Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702,

9

708 (5th Cir. 2016) ("Was it all of her workday (as in *[White]*), 75 percent of her workday (as in *Wilson [v. Monarch Paper Co.*, 939 F.2d 1138,] 1145 [(5th Cir. 1991]), less than 5 minutes per week, or any part of her workday at all? Neither the district court nor we have the slightest idea.").

Here, Plaintiff first alleges that her supervisors, Gaafar and Belcher, retaliated against her by taking away her technical duties and forcing her to perform "custodial" duties. Doc. #31 at 10, 21–22. As to Gaafar, Plaintiff stated that he began giving her non-technical duties when she first started, before she took any protected actions. Doc. #31, Ex. 6 at 554. She estimated that these duties constituted 50%–65% of her responsibilities, increasing during the HUG events. Doc. #31, Ex. 6 at 550–54. While a dramatic shift in duties following a protected act could be grounds for a retaliation claim, the causal chain here is severed by the fact she was performing these duties before she engaged in any protected activity.[6] *See Breeden*, 532 U.S. at 271–74. As to Belcher, though Plaintiff testified that he stripped Plaintiff of her technical duties once he became her manager in March 2017, her own record evidence plainly shows she maintained technical duties during this period.[7] Doc. #26, Ex. C at 143:19–23; Doc. #31, Ex. 15 at 4 (employee testimonials relating to Plaintiff's technical duties in 2017). Accordingly, while Plaintiff is owed favorable inferences at

---

[6] Furthermore, an increase from 50% to 65% of Plaintiff's daily duties when she was helping set up the physical demo space for the HUG event is not materially adverse. In *White*, the court found adversity where the plaintiff's daily duties entirely changed to a less prestigious and more arduous assignment. 548 U.S. at 68, 71–72. In *Wheat*, the court noted that a former executive manager being reassigned to janitorial tasks for 75% of his day would constitute material adversity in a retaliation case. 811 F.3d at 707–08 (discussing *Wilson*, 939 F.2d at 1145–46). The Court finds that no reasonable trier of fact could equate Plaintiff's situation with that of either plaintiff in *White* or *Wilson*.

[7] Plaintiff also refers the Court to an email thread from November 7, 2017, which contains an IM conversation where Belcher told Plaintiff she was not responsible for maintaining certain CEC equipment. Doc. #31, Ex. 24 at 3. However, in this same email thread, Belcher also stated that maintaining the system was indeed Plaintiff's responsibility and an HR representative requested Plaintiff and Belcher speak on the phone to clarify their miscommunication. *Id.*, Ex. 24 at 2, 5. This email does not evidence that Plaintiff was entirely stripped of her technical duties, as she claims, nor does it offer the Court a means of determining how her duties changed under Belcher. *Id.* at 16; *see Wheat*, 811 F.3d at 708.

this phase, she has failed to offer any evidence that would allow the Court to determine the extent to which her day-to-day work assignments changed under Belcher's management.  *See Wheat*, 811 F.3d at 708.

Next, Plaintiff argues that Defendant retaliated against her when she was removed from certain work-related communications.  Doc. #31 at 22.  The only document Plaintiff offers that supports this assertion, aside from her own self-serving and conclusory allegations, is a cancellation of a series of weekly "catch-up" meetings with her supervisor at the time, Belcher. *Id.*, Ex. 22 at 2.  However, Defendant's 30(b)(6) representative testified that these meetings were not cancelled, but merely rescheduled to include a representative from HR.  *Id.*, Ex. 11 at 125:1– 127:4.  Plaintiff does not dispute this fact or allege that the meetings in their new form were adverse. *See id.* at 21–23.  Furthermore, though the Court is not bound by the out-of-circuit cases Plaintiff cites to support her claim, these rescheduled meetings are a far cry from being "excluded from all departmental meetings and client outings."  *See Preda v. Nissho Iwai Am. Corp.*, 128 F.3d 789, 791 (2d Cir. 1997).

Finally, Plaintiff argues that Defendant retaliated against her for engaging in protected activity when Belcher removed her from global HUG support duties.  Doc. #31 at 22.  Despite Defendant's claim that Plaintiff was only ever responsible for North American duties, Belcher instructed Plaintiff to remove supporting global HUG demo events from her 2018 goals on November 17, 2017, roughly three months after Plaintiff filed an internal complaint against him and four months after she informed HR that she would file an EEOC complaint against Defendant. Doc. #26, Ex. F ¶ 4; Doc. #31, Ex. 17 at 2, Ex. 21 at 4 and Ex. 30 at 6–7.  Making all justifiable inferences in Plaintiff's favor, the Court assumes Plaintiff had global duties prior to Belcher's request.  *See Anderson*, 477 U.S. at 255.  The record also confirms that when Belcher gave this instruction, he was aware of Plaintiff's internal complaint against him and Plaintiff's notice to HR

that she would file an EEOC charge.  Doc. #31, Ex. 18 at 2 and Ex. 23 at 2.  Stripping Plaintiff of her global duties constituted an adverse employment action, as these more prestigious duties were taken from her entirely, and the close temporal proximity between Plaintiff's protected activity and the adverse employment action, along with other evidence,[8] is sufficient to show a causal connection.  *See White,* 548 U.S. at 68, 71–72; *see also Feist*, 730 F.3d at 454 (noting that a time lapse of up to four months may be sufficient to infer a causal connection).  Thus, Plaintiff carried her initial *McDonnell Douglas* burden.  *See Feist*, 730 F.3d at 454.  In neither its Motion nor Reply did Defendant state a legitimate, non-retaliatory reason for this action, thus failing to carry its burden.  *See* Doc. #26 at 29–33; Doc. #37 at 4–5; *Feist*, 730 F.3d at 454.

As such, Plaintiff's Section 1981 retaliation claim based on her removal from global duties survives summary judgment.[9]  However, because Plaintiff claims the stripping of her global duties was an act of retaliation and discrimination and the act occurred after Plaintiff's first EEOC charge was filed, but more than 300 days before the second EEOC charge was filed, Plaintiff's Title VII claim based on the stripping of these duties has not been exhausted and cannot survive summary judgment.  *See Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 370 (5th Cir. 2017) (citing *Scott v. Univ. of Miss.*, 148 F.3d 493, 514 (5th Cir. 1998), *abrogated on other grounds by Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000)) (collecting cases finding that an exhaustion exception for

---

[8] Plaintiff has offered evidence that Belcher exhibited retaliatory animus against her and that Defendant departed from its normal procedures relating to her earlier complaints against Belcher. Doc. #31, Ex. 17 at 4 ("Irrespective of where this process goes – [Plaintiff] needs to be Managed out"), Ex. 31 at 5 (Defendant's workplace harassment procedure stating the company will promptly investigate allegations), and Ex. 32 at 2 (HR personnel email noting that Plaintiff's allegations concerning the June 2016 tape throwing were "ultimately not addressed" until August 2017).

[9] Section 1981 claims arising under the amended 1991 version of the statute, as Plaintiff's do, are subject to a four-year statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371, 382 (2004).  Therefore, Plaintiff's claims are not time-barred.

retaliation claims arising out of an earlier-filed EEOC charge does not apply to claims for retaliation and discrimination); Doc. #26, Ex. C at 145:19–23.

### 2.    Reduction in Force

Defendant next argues that Plaintiff's retaliation claims related to her separation from Defendant cannot survive summary judgment because it has stated a legitimate, non-retaliatory reason for the separation and Plaintiff cannot establish pretext.  Doc. #26 at 32–33.  Assuming Plaintiff could establish a *prima facie* case of retaliation, Defendant satisfied its *McDonnell Douglas* burden by proffering that Plaintiff's position was eliminated as part of a reduction in force. *See Roberson*, 373 F.3d at 656; Doc. #26, Ex. A ¶¶ 12–13 and Ex. F ¶¶ 6–9.  Thus, it is Plaintiff's burden to prove pretext. *See Feist*, 730 F.3d at 454.

Plaintiff has not offered sufficient evidence to create a substantial conflict in evidence regarding whether her protected activity was the but-for cause of the position elimination.  *See Feist*, 730 F.3d at 454.  Since Plaintiff's EEOC charge was not processed until November 27, 2017, Defendant did not receive it until two months after Moshier first contemplated the reduction in force.  Doc. #26, Ex. F ¶¶ 6–9; Doc. #31, Ex. 26 at 2 and Ex.27 at 2–3.  Thus, Plaintiff cannot show that her first EEOC charge was the but-for cause of the decision.  *See Breeden*, 532 U.S. at 271–74.  As to her earlier protected activity, Moshier and Taylor have filed sworn affidavits stating that they did not consider these activities when they decided to eliminate Plaintiff's position.  Doc. #26, Ex. A ¶ 13 and Ex. F ¶ 9.  In response, Plaintiff again points to the fact that only her position was eliminated and asserts that she had essentially the same duties as other members of the Demo Team as evidence of Defendant's retaliatory motive.  Doc. #31 at 25–26.  These arguments fail for the same reasons explained above regarding Plaintiff's discrimination claim.  Given that Plaintiff's position was the most closely bound up in the physical demo space, the Court finds it reasonable that a reduction in force aimed at phasing out in-person demos would result in the elimination of

only her position and, by failing to offer other probative evidence, Plaintiff has failed to create a genuine issue of material fact as to her retaliation claims based on the reduction in force. *See Celotex*, 477 U.S. at 322–25; *Feist*, 730 F.3d at 454.

Accordingly, Defendant's Motion is denied as to the Section 1981 retaliation claim based on the stripping of Plaintiff's global job duties and granted for all other retaliation claims.

### d.   Retaliatory Hostile Work Environment

Finally, Defendant argues that Plaintiff's retaliatory hostile work environment claims should not survive summary judgment because the alleged harassing conduct does not meet the requisite severe or pervasive standard and, further, there was no causal connection between Plaintiff's protected conduct and the alleged harassment. Doc. #26 at 4, 25–28. While the Fifth Circuit has not recognized retaliatory hostile work environment claims, twelve other circuits have. *Montgomery-Smith v. George*, 810 F. App'x 252, 258 (5th Cir. 2020) (per curiam). As such, district courts in this circuit typically proceed as if such a claim exists. *See, e.g., Griffin v. Texas Dep't of State Health Servs.*, No. 4:10-cv-01673, 2011 WL 759476, at *4 (S.D. Tex. Feb. 24, 2011). Courts look to hostile work environment claims based on sexual harassment and racial discrimination as well as the *White* material adversity standard when analyzing such claims. *Montgomery-Smith*, 810 F. App'x at 258; *Fallon v. Potter*, 277 F. App'x 422, 428–29 (5th Cir. 2008). Accordingly, the Court considers whether the alleged harassment (1) was based on Plaintiff's participation in a protected activity, (2) affected a term, condition, or privilege of her employment, and (3) might have dissuaded a reasonable employee from engaging in protected activity. *See Fallon*, 277 F. App'x at 428–29; *Montgomery-Smith*, 810 F. App'x at 258.

To determine whether the alleged retaliatory harassment affected a term, condition, or privilege of employment, the Court employs the same "severe or pervasive" analysis employed in traditional hostile work environment cases. *Montgomery-Smith*, 810 F. App'x at 258. The alleged

14

conduct must be "objectively and subjectively offensive." *Id.* at 258–59 (citation omitted). "To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. No single factor is determinative." *Id.* (citation omitted).

Here, Plaintiff offered evidence that her mental well-being suffered because of her working environment. Doc. #31, Ex. 39 at 4. At the summary judgment stage, the Court finds this evidence sufficient to satisfy the subjective requirement. *See Montgomery-Smith*, 810 F. App'x at 258–59; *Anderson*, 477 U.S. at 255. As to objective offensiveness, Plaintiff first claims that she received negative performance evaluations as retaliation for her protected activity. Doc. #31 at 28. This is not the kind of severe or pervasive conduct which may constitute a hostile work environment. *See, e.g., Price v. Wheeler*, 834 F. App'x 849, 856, 859 (5th Cir. 2020) (finding that performance evaluations which were more negative than the plaintiff believed she deserved did not constitute discrimination or harassment). Plaintiff also argues that her claims can be based off her allegation that "there was something that needed to be picked up and [Gafaar] told [someone], get [Plaintiff] to do it because [she's] strong." Doc. #26, Ex. C at 154:20-155:8. Statutory protections against retaliation for employees who engage in protected activity "cannot immunize that employee from those petty slights or minor annoyances that often take place at work." *White*, 548 U.S. at 68. The Court finds these comments are just that – a petty slight or minor annoyance – even in a light most favorable to Plaintiff. As such, they are insufficient to support Plaintiff's retaliatory hostile work environment claims. *See Montgomery-Smith*, 810 F. App'x at 258.

Next, Plaintiff argues that several incidents involving Belcher are evidence of a retaliatory hostile work environment, including: (1) a June 2016 encounter where Belcher yelled "Are you

going to listen?" at Plaintiff several times and threw a roll of tape near her, (2) a June 2017 incident where Belcher yelled at Plaintiff and later banged on his own keyboard, and (3) a team call during which Belcher said he would destroy mobile devices if they were used at a HUG event. Doc. #31 at 27–29. Even assuming these events meet the threshold of severe or pervasive, Plaintiff has not offered any evidence to demonstrate that they occurred because of her protected activity. *See id.* at 26–31. The incidents in June 2016 and June 2017 were work disputes, fueled by Belcher and Plaintiff's conflicting technical ideas leading up to HUG conferences. Doc. #26, Ex. C at 168:13–172:4; Doc. #31, Ex. 20 at 2. Belcher's comment about destroying mobile devices was directed at all the individuals on the team call and was a warning to not drain the batteries of the equipment used at HUG. Doc. #26, Ex. K at 2, 7–8. Without a connection to Plaintiff's protected conduct, these incidents are insufficient to establish retaliation hostile work environment claim. *See Montgomery-Smith*, 810 F. App'x at 258.

Finally, Plaintiff alleges her claim can be based upon Jarrell telling her "we are placing you in a hostile working environment" and "if you file another complaint against anyone you better watch out" during a performance evaluation in February 2017.[10] Doc. #31 at 29, Ex. 3 ¶ 18. Assuming Jarell made these comments, they are insufficient to support Plaintiff's claims. Generally, one warning against further protected activity is not enough to rise to the level of material adversity. *Compare Hernandez v. Johnson*, 514 F. App'x 492, 498–99 (5th Cir. 2013) (finding that an employee's perception of one call from an employer as a threat not to file an internal HR complaint, combined with the same employer's previous comments that she was not afraid to fire people, did not constitute material adversity) *with Fallon*, 277 F. App'x at 428–29

---

[10] Defendant objects to Plaintiff's offering of Doc. #31, Ex. 16, which is a transcript of a partial recording of this conversation, on the grounds of optional completeness. Doc. #37 at 1 n.1. The Court does not need to address this objection, as its analysis would not change even if it relied on the transcript because the transcribed language is less severe than what Plaintiff avers Jarrell said.

(finding a fact issue as to material adversity where the employer made repeated, specific threats to dissuade the employee from engaging in protected activity). Additionally, the fact that a single warning or comment did not dissuade the employee from engaging in further protected activity can, among other factors, evince that the sole comment would not dissuade a reasonable employee. *See Muttathottil v. Mansfield*, 381 F. App'x 454, 458 (5th Cir. 2010).

Here, there was a single incident where Plaintiff was warned against making any more complaints: her February 2017 performance evaluation meeting with Jarrell. Doc. #31, Ex. 3 ¶ 18. During this meeting, Jarrell informed Plaintiff that she would begin reporting to Belcher instead of himself. Doc. #26, Ex. A at ¶ 10 and Ex. C at 127:24–129:10. A month later, Jarrell resigned from his job. *Id.*, Ex. A at ¶ 10. Even if Plaintiff was not aware during the evaluation meeting that Jarrell would soon be resigning, she reported his remarks immediately, weighing in favor of a finding that the comments would not dissuade a reasonable employee from engaging in further protected activity. *See Muttathottil*, 381 F. App'x at 458; Doc. #26, Ex. C at 129:2–20. Plaintiff also testified that she engaged in as much protected activity as she wanted to while employed by Defendant. Doc. #26, Ex. C at 104:3–19, 105:22–106:18. Further, the Court finds that a reasonable employee would not be intimidated by the admonishments of an individual who was no longer her supervisor, ceased working for their mutual employer, and did not exert any influence over the day-to-day operations of the employer after his resignation. Because the alleged harassment (1) occurred only once, (2) never discouraged Plaintiff from engaging in protected activity, and (3) came from an individual who Plaintiff either (a) knew would be shortly leaving the company or (b) whom she only had to work under for a short time thereafter, the Court finds that Plaintiff has failed to create a genuine issue of material fact regarding the material adversity of Jarrell's conduct. *See Fallon*, 277 F. App'x at 428–29; *Montgomery-Smith*, 810 F. App'x at 258.

Accordingly, because Plaintiff has failed make a showing sufficient to establish essential elements of her claims, the Motion is granted as to her retaliatory hostile work environment claims.

**IV.    Conclusion**

For the foregoing reasons, the Court finds that Plaintiff has failed to meet her burden of showing that Defendant's legitimate, nondiscriminatory reason for her termination was pretext. Further, the Court finds that Plaintiff failed to offer evidence showing that the alleged harassment underpinning her hostile work environment claims was based on her membership in a protected category.  Additionally, Plaintiff has only offered sufficient evidence to support her Section 1981 retaliation claim, as it relates to her global work duties.  Finally, Plaintiff failed to create a genuine issue of material fact as to her retaliatory hostile work environment claims.

Accordingly, Defendant's Motion is GRANTED in part and DENIED in part.  Summary judgment is DENIED as to Plaintiff's Section 1981 retaliation claim based on global work duties and GRANTED as to all other claims.

It is so ORDERED.

AUG 3 1 2021

_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge